**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| ALAYA SMITH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EUROPEAN WAX CENTER, INC.,<br><br>Defendant. | CIVIL ACTION NO. 4:26-cv-00144-ALM<br><br>Hon. Amos L. Mazzant |

**DEFENDANT EUROPEAN WAX CENTER, INC.'S 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR TO STAY**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................2

STATEMENT OF ISSUES TO BE DECIDED .........................................................3

ARGUMENT ........................................................................................................4

I. LEGAL STANDARD ..........................................................................................4

II. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE WIRETAP ACT .........5

i. Plaintiff Fails To Allege Any Unlawful Interception Because The Wiretap Act Is A One-Party Consent Statute. ..........................................5

ii. Plaintiff Fails To State A Claim Under The Wiretap Act Because Computer Code Is Not A "Device." ..............................................11

iii. The Information Was Not Intercepted "In Transit." ..........................12

iv. The Contents of Plaintiff's Communications Were Not Disclosed. ..........13

III. PLAINTIFF FAILS TO STATE A CLAIM FOR INTRUSION UPON SECLUSION ..........................................................................................14

i. Plaintiff Fails to Allege an Actionable Intrusion .................................14

ii. Plaintiff Fails to Allege an Intentional Intrusion ................................16

iii. Plaintiff Does Not Allege an Intrusion Highly Offensive to a Reasonable Person ....................................................................17

IV. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE TEXAS DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT ..................................................................................................18

i. Plaintiff Fails to Meet Rule 9(b)'s Heightened Pleading Standard ............18

ii. Plaintiff Does Not Identify Any Conduct Specifically Enumerated in § 17.46(b). ..............................................................................19

iii. The Alleged Deceptive Conduct Did Not Occur "In Connection" with Plaintiff's Transaction in Goods or Services. ....................................20

iv. Plaintiff Fails to Plead Causation and Reliance. ....................................21

v. Plaintiff Fails to Plead Recoverable Damages. .......... 21

V. PLAINTIFF FAILS TO STATE A CLAIM FOR COMMON LAW FRAUD, DECEIT AND/OR MISREPRESENTATION. .......... 22

i. Plaintiff Fails to Allege an Actionable Representation .......... 23

ii. Plaintiff Fails to Allege Reliance .......... 24

iii. Plaintiff Fails to Allege Injury .......... 24

VI. PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT. .......... 25

VII. THE COURT SHOULD STAY THIS ACTION PENDING FINAL APPROVAL PROCEEDINGS IN *CUMOR & DUNN V. EUROPEAN WAX CENTER, INC.*, CASE NO. 26-CA-002430 (FLA. 13TH JUD. CIR.). .......... 26

CONCLUSION .......... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amin v. United Parcel Serv., Inc.*,
66 F.4th 568 (5th Cir. 2023) .......... 15

*Amstadt v. U.S. Brass Corporation*,
S.W.2d 644 (Tex. 1996) .......... 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*B.K. v. Eisenhower Med. Ctr.*,
No. EDCV232092JGBKKX, 2024 WL 878100 (C.D. Cal. Feb. 29, 2024) .......... 6, 7, 10

*Ball v. United Parcel Serv., Inc.*,
No. CIV.A. H-10-1253, 2011 WL 1642148 (S.D. Tex. Apr. 29, 2011) .......... 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Berry v. Indianapolis Life Ins. Co.*,
608 F. Supp. 2d 785 (N.D. Tex. 2009) .......... 18

*Brown & Brown of Texas, Inc. v. Omni Metals, Inc.*,
317 S.W.3d 361 (Tex. App. 2010) .......... 21

*Brown v. Learfield Communications, LLC*,
1:23-CV-00374-DAE, 2024 WL 3676709 (W.D. Tex. June 27, 2024) .......... 5, 6, 9

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) .......... 9

*Cherkaoui v. Santander Consumer USA, Inc.*,
32 F. Supp. 3d 811 (S.D. Tex. 2014) .......... 17

*Cohen v. Casper Sleep Inc.*,
2018 WL 3392877 (S.D.N.Y. Jul. 12, 2018) .......... 10

*U.S. ex rel. Doe v. Dow Chem. Co.*,
343 F.3d 325 (5th Cir. 2003) .......... 4

*Doe v. Genesis Health Sys.*,
No. 4:23-cv-04209-JEH, 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) .......... 6

*Doggett v. Travis L. Firm, P.C.*,
555 S.W.3d 127 (Tex. App. 2018)....................14

*In re Enron Corp. Sec., Derivative & Erisa Litig.*,
762 F. Supp. 2d 942 (S.D. Tex. 2010)....................5

*Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*,
51 S.W.3d 573 (Tex. 2001)....................23

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011)....................6, 7

*Franklin v. Apple Inc.*,
569 F. Supp. 3d 465 (E.D. Tex. 2021)....................18, 19

*Gilday v. Dubois*,
124 F.3d 277 (1st Cir. 1997)....................14

*In re Google Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)....................6, 7, 9

*Goulart v. Cape Cod Healthcare, Inc.*,
No. CV 25-10445-RGS, 2025 WL 1745732 (D. Mass. June 24, 2025)....................10

*In re Grp. Health Plan Litig.*,
No. 23-CV-267, 2023 WL 8850243 (D. Minn. Dec. 21, 2023)....................7

*Hartley v. Univ. of Chicago Med. Ctr.*,
No. 22 C 5891, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023)....................6

*Healix Infusion Therapy, Inc. v. Helix Health, LLC*,
747 F. Supp. 2d 730 (S.D. Tex. 2010)....................11

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
832 S.W.2d 39 (Tex. 1992)....................25

*Johnson v. MHMR Auth. of Brazos Valley*,
2023 WL 8630064 (S.D. Tex. Dec. 13, 2023)....................16

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)....................8, 10, 11

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)....................12, 13

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023)....................7

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ....................6

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ....................10

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ....................13

*Licea v. Cinmar, Inc.*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ....................13

*Lovelace v. Software Spectrum, Inc.*,
78 F.3d 1015 (5th Cir. 1996) ....................5

*McIntosh v. Bank of Am., N.A.*,
No. 3:12-CV-4336-BH, 2013 WL 3866619 (N.D. Tex. July 26, 2013) ....................19

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) ....................5

*Odia v. Lopez*,
No. 14-00-00179-CV, 2001 WL 777066 (Tex. App. July 12, 2001) ....................22

*Penn-Am. Ins. Co. v. Zertuche*,
770 F. Supp. 2d 832 (W.D. Tex. 2011) ....................21

*Plotkin v. IP 12 Axcess, Inc.*,
407 F.3d 690 (5th Cir. 2005) ....................5

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ....................13

*Ross v. Midwest Commc'ns, Inc.*,
870 F.2d 271 (5th Cir. 1989) ....................15

*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*,
607 F.3d 1029 (5th Cir. 2010) ....................23

*Steve Jackson Games, Inc. v. U.S. Secret Serv.*,
36 F.3d 457 (5th Cir. 1994) ....................12

*Summerlin v. Barrow*,
2018 WL 1322172 (N.D. Tex. Mar. 13, 2018) ....................16

*Sussman v. ABC*,
186 F.3d 1200 (9th Cir. 1999) ....................9

*Sweat v. Houston Methodist Hospital*,
No. CV H-24-775, 2024 WL 3070184 (S.D. Tex. June 20, 2024)....................15, 16, 17

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
975 F.2d 1134 (5th Cir. 1992) ....................4

*Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*,
300 S.W.3d 348 (Tex. App. 2009)....................25

*Trusty v. Walmart Inc.*,
2020 WL 2497733 (S.D. Tex. May 13, 2020)....................14

*United States v. Reed*,
575 F.3d 900 (9th Cir. 2009) ....................13

*Univ. Baptist Church Fort Worth v. Lexington Ins. Co.*,
No. 4:17-CV-962-A, 2018 WL 2372645 (N.D. Tex. May 23, 2018)....................19

*Val-Com Acquisitions Tr. v. Bank of Am., N.A.*,
No. 4:10-CV-421, 2011 WL 4591959 (E.D. Tex. Sept. 30, 2011)....................19

*Valenzuela v. Aquino*,
853 S.W.2d 512 (Tex. 1993)....................14, 17

*Walters v. Blue Cross & Blue Shield of Tex., Inc.*,
2022 WL 902735 (N.D. Tex. Mar. 28, 2022)....................15, 17

*U.S. ex rel. Williams v. McKesson Corp*,
No. 3:12-CV-0371-B, 2014 WL 3353247 (N.D. Tex. July 9, 2014)....................5

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025)....................9

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................13

**Statutes**

18 U.S.C. § 1511(2)(d) ....................9

18 U.S.C. § 2510 *et seq*....................1, 3, 11, 13

18 U.S.C. § 2511....................5

Tex. Bus. & Com. Code § 17.45(a)(11)....................22

Tex. Bus. & Com. Code § 17.46....................18, 19, 20

Tex. Bus. & Com. Code § 17.50....................18, 19, 22

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)........................................................................................................4

## INTRODUCTION

Plaintiff Alaya Smith ("Plaintiff") brings this putative class action against Defendant European Wax Center, Inc. ("EWC"), asserting claims under the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.* ("Wiretap Act"), the Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA"), intrusion upon seclusion, common-law fraud, and unjust enrichment. Plaintiff alleges that EWC operates a website on which it deploys various tracking technologies that purportedly collect and transmit information regarding users' interactions with the Website to third parties for advertising, analytics, and marketing purposes. (Dkt. 1.) Plaintiff alleges that these technologies continued functioning after users purportedly opted out through the Website's cookie settings and that EWC thereby collected and disclosed users' information without valid consent. (*Id.* ¶¶ 93-104.)

Plaintiff's claims fail as a matter of law. The Wiretap Act claim is barred because Plaintiff's own allegations establish that EWC was a party to the challenged communications and expressly deployed the technologies at issue on its own website. Plaintiff also fails to plausibly allege a qualifying interception, the use of a covered device, the disclosure of protected contents, or an independent crime or tort sufficient to invoke the crime-tort exception.

Plaintiff's remaining claims fare no better. The intrusion upon seclusion claim is premised on alleged website tracking and disclosure of information - conduct that Texas courts repeatedly have held does not constitute the type of intrusion required to sustain that tort. The DTPA and fraud claims fail because Plaintiff does not adequately plead an actionable misrepresentation, reliance, producing cause, or recoverable economic injury. And the unjust enrichment claim fails because Plaintiff does not plausibly allege that she conferred a benefit upon EWC under circumstances making retention of that benefit unjust.

Finally, this action should be stayed pending final approval proceedings in *Cumor & Dunn v. European Wax Center, Inc.*, Case No. 26-CA-002430 (Fla. 13th Jud. Cir.). Plaintiff previously opposed a stay by arguing that the Florida settlement would not resolve the claims asserted here – a representation that the Court accepted in denying Defendant's prior motion to stay. However, since making those representations to this Court, Plaintiff: (1) decided not to opt-out of the Florida settlement by the opt-out deadline (June 30, 2026) and (2) represented to the Florida court that the Florida settlement "would extinguish the federal and state-law claims" Plaintiff seeks to assert in this action. Under these circumstances, a brief stay would conserve judicial and party resources pending the Florida court's final-approval determination.

Accordingly, EWC respectfully requests that the Court dismiss Plaintiff's Class Action Complaint in its entirety, with prejudice, and grant such other and further relief as the Court deems just and proper. Alternatively, EWC respectfully requests that the Court stay this action pending final approval proceedings in *Cumor & Dunn*.

## BACKGROUND

Plaintiff alleges that EWC operates a website through which users can browse services, locate studio locations, schedule appointments, purchase products and gift cards, and access promotional offers. (Dkt. 1 ¶¶ 2, 14.) Plaintiff alleges that although the website presents a cookie banner and settings interface purporting to give users control over the sale or sharing of personal information, EWC deploys various "Tracking Tools"—including the Meta Pixel, Google Analytics, Trade Desk technologies, and related cookies—that automatically collect and transmit users' browsing activity, search inputs, website interactions, and device identifiers to third parties, even after users purportedly opt out of such tracking. (*Id.* ¶¶ 2-6, 33-79, 81-104.) Plaintiff alleges that these tools intercept users' electronic communications in real time and disclose "Sensitive

Information" without informed consent, and that EWC integrated and controlled these tools to support advertising, analytics, audience development, and related marketing activities. (*Id.* ¶¶ 6, 33, 39-40, 67, 76-78, 80, 84-88.)

Plaintiff alleges that she visited the Website, including in or around December 2025, to browse services and book an appointment, and that her personal information and browsing activity were transmitted to third parties despite EWC's representations concerning users' ability to control tracking. (*Id.* ¶¶ 8, 13, 92-99.) Plaintiff further alleges that, on February 2, 2026, she attempted to disable non-essential tracking through the Website's cookie settings but that tracking continued notwithstanding those selections. (*Id.* ¶ 13.) Based on these allegations, Plaintiff asserts claims for: (1) violation of the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*; (2) intrusion upon seclusion; (3) violations of the Texas Deceptive Trade Practices and Consumer Protection Act; (4) common-law fraud, deceit, and/or misrepresentation; and (5) unjust enrichment. (*Id.* ¶¶ 113-75.)

## STATEMENT OF ISSUES TO BE DECIDED

Pursuant to Local Rule CV-7(a)(1), the issues to be decided by this Court are as follows:

1. Whether Plaintiff fails to state a claim under the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*, because the Complaint does not plausibly allege an unlawful interception, the use of a qualifying device, an interception occurring in transit, or the disclosure of protected communications, as required under the Act;

2. Whether Plaintiff fails to state a claim for intrusion upon seclusion because the alleged website-tracking practices do not constitute an actionable intrusion, an intentional intrusion, or conduct that would be highly offensive to a reasonable person under Texas law;

3. Whether Plaintiff fails to state a claim under the Texas Deceptive Trade Practices and Consumer Protection Act because the Complaint does not satisfy Rule 9(b), does not allege

an actionable violation of the DTPA, and fails to adequately plead reliance, causation, or recoverable damages;

4. Whether Plaintiff fails to state a claim for common-law fraud, deceit, and/or misrepresentation because the Complaint does not adequately plead an actionable misrepresentation, reliance, or resulting injury and fails to satisfy Rule 9(b);

5. Whether Plaintiff fails to state a claim for unjust enrichment because the Complaint does not plausibly allege that Plaintiff conferred a benefit upon Defendant under circumstances making retention of that benefit unjust; and

6. Alternatively, whether this action should be stayed pending final approval proceedings in *Cumor & Dunn v. European Wax Center, Inc.*, Case No. 26-CA-002430 (Fla. 13th Jud. Cir.), in the interests of judicial economy and conservation of party resources.

## ARGUMENT

### I. LEGAL STANDARD.

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court assessing the sufficiency of a complaint must disregard legal labels or conclusions, which are not entitled to the presumption of the truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

Fraud-based claims must be plead with particularity. Fed. R. Civ. P. 9(b). To state a claim based in fraud, a plaintiff must assert "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992) (affirming dismissal based on Rule 9(b)); *see also U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d

325, 328 (5th Cir. 2003) ("At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud.") (citation omitted); *In re Enron Corp. Sec., Derivative & Erisa Litig.*, 762 F. Supp. 2d 942, 957–58 (S.D. Tex. 2010). This requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP 12 Axcess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Failing to comply with Rule 9(b)'s requirements mandates dismissal. *U.S. ex rel. Williams v. McKesson Corp*, No. 3:12-CV-0371-B, 2014 WL 3353247, at *3 (N.D. Tex. July 9, 2014) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

## II. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE WIRETAP ACT.

Plaintiff alleges that EWC violated Section 2511(1)(a) of the Wiretap Act. To state a claim for violation of Section 2511(1)(a), Plaintiff must allege that EWC "intentionally intercept[ed], endeavor[ed] to intercept, or procure[d] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. 2511(1)(a).

### i. Plaintiff Fails To Allege Any Unlawful Interception Because The Wiretap Act Is A One-Party Consent Statute.

Plaintiff cannot establish that any communication has been unlawfully "intercepted" by EWC or the various types of code that Plaintiff alleges EWC placed on the website. The Wiretap Act is a one-party consent statute. 18 U.S.C. 2511(2)(d) (not unlawful for someone to "intercept . . . electronic communication where such person is a party to the communication."); *see also In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 275 (3d Cir. 2016) (discussing "one-party consent language in the Wiretap Act"); *Brown v. Learfield Communications, LLC*, 1:23-CV-00374-DAE, 2024 WL 3676709, at *4 (W.D. Tex. June 27, 2024), *appeal dismissed sub*

*nom. Brown v. Learfield Communications, L.L.C.*, 24-50632, 2024 WL 5380272 (5th Cir. Nov. 13, 2024).

It is well-settled that, where a plaintiff alleges that a website owner's use of pixels, cookies, analytics tools, or similar tracking technologies resulted in the interception of communications between a user and the website, the website owner is a party to the communication and therefore cannot be liable for unlawfully intercepting its own communications. *Brown*, 2024 WL 3676709, at *4 ("As Plaintiff alleges, Learfield owns and operates the website at issue. Learfield has allegedly placed 'tracking tools' on the website. Therefore, Plaintiff's communications with the website were communications with Learfield. Under the Wiretap Act, Learfield was a party to whatever data was allegedly 'intercepted.'"); *see also Hartley v. Univ. of Chicago Med. Ctr.*, No. 22 C 5891, 2023 WL 7386060, at *1 (N.D. Ill. Nov. 8, 2023); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 842 (N.D. Ill. 2023); *Doe v. Genesis Health Sys.*, No. 4:23-cv-04209-JEH, 2025 WL 1000192, at 8 (C.D. Ill. Mar. 18, 2025); *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142-43 (3d Cir. 2015); *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 713 (N.D. Cal. 2011); *B.K. v. Eisenhower Med. Ctr.*, No. EDCV232092JGBKKX, 2024 WL 878100, at 5 (C.D. Cal. Feb. 29, 2024). Here, Plaintiff repeatedly alleges that EWC owns and operates the Website, affirmatively selected and deployed the Meta Pixel, Google Analytics, and Trade Desk technologies, entered into commercial arrangements with those providers, and controlled whether and how user data was transmitted. (Dkt. 1 ¶¶ 33, 35, 39, 65, 74, 80, 87-89, 129.) According to Plaintiff's own allegations, the challenged communications were communications between website visitors and EWC itself, making EWC a party to those communications as a matter of law.

The Wiretap Act likewise makes clear that liability does not attach where one party to the communication consents to the alleged interception. *In re Google Inc. Cookie Placement*

*Consumer Priv. Litig.*, 806 F.3d at 135 ("[O]rdinarily, no cause of action will lie against a private person . . . where one of the parties to the communication has given prior consent to such interception"); *In re Grp. Health Plan Litig.*, No. 23-CV-267 (JWB/DJF), 2023 WL 8850243, at 7 (D. Minn. Dec. 21, 2023) (where defendant is the intended recipient of the communication, it is "necessarily one of its parties" and has done nothing unlawful under the Wiretap Act). Plaintiff expressly alleges that EWC procured, integrated, configured, and enabled the challenged Tracking Tools on the Website. (Dkt. 1 ¶¶ 33, 35, 65, 80, 88, 129.) Plaintiff further alleges that EWC voluntarily embedded those technologies into its Website and caused them to operate whenever users visited and interacted with the Website. (Dkt. 1 ¶¶ 80, 88, 97-104, 127-30.) Because one party to the communications—EWC—consented to the alleged interception, Plaintiff's Wiretap Act claim fails as a matter of law.

A party to a communication cannot unlawfully "intercept" a communication directed to it and cannot be held liable for "eavesdropping" upon itself. *See id.* at 274 (dismissing Wiretap Act claim because defendant was a party to the communications); *In re Google Cookie Placement Consumer Priv. Litig.,* 806 F.3d 125, 142-43 (3d Cir. 2015) (dismissing Wiretap Act claim because tracking cookies placed by advertising providers made the advertiser the intended recipient of the electronic transmission); *In re Facebook Priv. Litig.,* 791 F. Supp. 2d 705, 713 (N.D. Cal. 2011) (dismissing Wiretap Act claim on same grounds); *B.K. v. Eisenhower Med. Ctr.,* No. EDCV232092JGBKKX, 2024 WL 878100, at *5 (C.D. Cal. Feb. 29, 2024) (dismissing Wiretap Act claim involving Pixel because defendant was website operator and, therefore, was a party to the information that plaintiff entered on its website); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023) ("Rush is therefore a party to those communications and cannot

be liable under the Wiretap Act for its alleged interception of them, if such an interception even occurred.")

Here, Plaintiff repeatedly alleges that EWC owns and operates the website and affirmatively selected, procured, configured, and deployed the challenged Tracking Tools. (Dkt. 1 ¶¶ 33, 35, 39, 65, 74, 80, 87-89, 129.) Plaintiff further alleges that EWC voluntarily integrated those technologies into the website pursuant to commercial relationships with the providers and controlled whether and how user data was transmitted. (Dkt. 1 ¶¶ 80, 88.) Therefore, Plaintiff's Wiretap Act claim fails because, according to Plaintiff's own allegations, Plaintiff's communications with the Website were communications with EWC, and EWC was a party to those communications. The fact that EWC allegedly configured Tracking Tools on EWC's own website does not transform EWC into a third-party interceptor. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) ("[a]s Defendant's customers must have chosen to deploy Oracle's tools on their websites, it necessarily follows that 'one of the parties to the communication'—the websites themselves—gave 'prior consent to such interception.'")

Nor do Plaintiff's allegations that EWC continued utilizing Tracking Tools after users purportedly opted out of certain cookies change that result. (Dkt. 1 ¶¶ 89-104, 130.) Those allegations may go to Plaintiff's theory regarding the adequacy of EWC's privacy disclosures or consent practices, but they do not alter the fact that the communications at issue were directed to EWC's Website and allegedly collected through technologies that Plaintiff contends EWC itself selected and deployed. Because EWC was a party to those communications, the party exception applies.

While there is a statutory exception under the Wiretap Act where a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the

Constitution or laws of the United States or of any State," 18 U.S.C. § 1511(2)(d), this exception does not apply to the alleged interception itself; instead, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *In re Google Cookie Placement,* 806 F.3d at 145 (emphasis in original) (citation omitted).

First, Plaintiff has not identified a single crime or tort that is separate and independent from the alleged interception itself. Plaintiff's Wiretap Act claim is premised on EWC's alleged use of Tracking Tools to collect and transmit browsing activity, search terms, appointment-booking activity, and related website interactions. (Dkt. 1 ¶¶ 127-130.) Plaintiff's remaining causes of action likewise turn on the same alleged conduct—namely, the purported collection, disclosure, or transmission of user information through the challenged Tracking Tools. See Dkt. 1 ¶¶ 132-140 (intrusion upon seclusion), ¶¶ 145-155 (Texas DTPA), ¶¶ 159-170 (fraud and misrepresentation), and ¶¶ 173-175 (unjust enrichment). Because the alleged wrongdoing underlying those claims is the same conduct that Plaintiff characterizes as the interception itself, those claims cannot serve as the independent crime or tort necessary to invoke the crime-tort exception.

Courts have repeatedly rejected attempts to invoke the crime-tort exception where the alleged crime or tort is not separate from the interception itself. See *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010); *Sussman v. ABC*, 186 F.3d 1200, 1201-03 (9th Cir. 1999); *Brown*, 2024 WL 3676709, at 5 ("[A] plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording"); *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 895 (S.D. Cal. 2025) ("Several decisions from the Northern District of California have reasoned '**<u>that the crime-tort exception to the Wiretap Act is inapplicable where the defendant's</u>**

**primary motivation was to make money, not to injure plaintiffs tortiously**.'") (emphasis added); *Katz-Lacabe*, 668 F. Supp. 3d at 945; *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) ("'[T]he focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious.' Defendant argues that Plaintiffs only allege that Defendant's purpose was economic benefit. The complaint alleges that the motivation underlying the Pixel installation was 'economic benefit'—or specifically 'to improve the effectiveness of its and Meta's advertising and marketing' and to 'monetiz[e] the information via targeted advertising, and other means.' . . . The Court finds that Plaintiffs have failed to meet their burden to show that the crime-tort exception applies."). The exception is inapplicable where the alleged tort or statutory violation arises solely from the collection or transmission of the same communications allegedly intercepted.

Plaintiff's claim is tethered to the alleged transmission of browsing activity, search terms, appointment-booking information, page interactions, and related communications occurring on EWC's Website—not some separate and independent tortious or criminal objective. *See B.K.*, 2024 WL 878100 at *5 (dismissing Wiretap Act claim because alleged commercial use of intercepted information was not independently unlawful conduct); *Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *3-4 (S.D.N.Y. Jul. 12, 2018) (rejecting argument that crime-tort exception applied to website tracking because defendants did not intercept communications "for the purpose" of committing a separate crime or tort); *Goulart v. Cape Cod Healthcare, Inc.*, No. CV 25-10445-RGS, 2025 WL 1745732, at *3 (D. Mass. June 24, 2025) ("The Complaint fails . . . to plausibly allege that CCHC's 'primary motivation' or 'determinative factor' in disclosing plaintiffs' personal health information through the software-tracking technology to Facebook and Google

was for the purpose of committing a criminal violation or tort, as opposed to commercial gain or convenience.").

As Plaintiff alleges, the challenged Tracking Tools were used to support advertising, analytics, audience development, conversion tracking, and marketing optimization – not to commit a crime or tort. (Dkt. 1 ¶¶ 39-40, 47-48, 67, 76-78, 86, 127.) Plaintiff specifically alleges that Meta Pixel data was used to improve advertising effectiveness and customer targeting, that Google Analytics provided feedback and analysis, and that Trade Desk tools facilitated targeted advertising and audience-building. (Dkt. 1 ¶¶ 39-40, 67, 76-78.) These allegations establish a commercial purpose, not an independent criminal or tortious one. See *Katz-Lacabe*, 668 F. Supp. 3d at 945 (crime-tort exception does not apply where defendant's purpose was "to make money," rather than "to perpetuate torts on millions of Internet users"). Accordingly, the crime-tort exception does not save Plaintiff's claim from dismissal with prejudice.

**ii. Plaintiff Fails To State A Claim Under The Wiretap Act Because Computer Code Is Not A "Device."**

To state a claim under the Wiretap Act, a plaintiff must "allege that a communication was intentionally intercepted through use of a device." *Healix Infusion Therapy, Inc. v. Helix Health, LLC*, 747 F. Supp. 2d 730, 744 (S.D. Tex. 2010) (citing 18 U.S.C. § 2510(5)). The Southern District of Texas has held that "the drive or server on which an e-mail is received does not constitute a 'device' for purposes of the Wiretap Act." *Id.* Here, Plaintiff does not plausibly allege that any qualifying interception device was used. Instead, Plaintiff's theory is that EWC embedded technologies into its website and configured those tools to collect information regarding users' interactions with the Website. (Dkt. 1 ¶¶ 33-79, 80-104, 122, 127-129.) Those allegations describe software code and website functionality operating as part of the website itself—not a separate interception device acquiring communications in transit. Indeed, Plaintiff alleges that EWC

selected, integrated, and configured the challenged technologies as part of its own website. (Dkt. 1 ¶¶ 33, 35, 65, 80, 88, 129.) Because Plaintiff fails to plausibly allege the use of a qualifying Wiretap Act "device," the Wiretap Act claim should be dismissed on this independent basis.

**iii. The Information Was Not Intercepted "In Transit."**

Plaintiff fails to plausibly allege that any communication was intercepted "in transit" within the meaning of the Wiretap Act. As one federal appellate court has explained, "[s]tanding alone, this definition [of 'intercept'] would seem to suggest that an individual 'intercepts' an electronic communication merely by 'acquiring' its contents, regardless of when or under what circumstances the acquisition occurs. Courts, however, have clarified that Congress intended a narrower definition of 'intercept' with regard to electronic communications." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876 (9th Cir. 2002). Thus, a communication must be acquired during transmission—not after receipt or storage—to constitute an interception under the Wiretap Act. *Id.* at 878; *Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 462 (5th Cir. 1994).

Plaintiff repeatedly asserts that Tracking Entities "intercept" communications contemporaneously with their transmission. (Dkt. 1 ¶¶ 33, 79, 103, 127.) But those allegations are legal conclusions. The complaint's factual allegations describe only that EWC allegedly embedded technologies into its Website and that those technologies collect, transmit, share, analyze, and use information concerning users' interactions with the Website. (*See, e.g.*, Dkt. 1 ¶ 39 (Meta Pixel "gather[s], collect[s], and then share[s] user information with Facebook"); ¶ 61 (Google Analytics collects information and sends it to Google); ¶ 72 (Trade Desk Pixel "collect[s] and transmit[s] user data"); ¶ 103 (Tracking Entities "collect and use" the information for commercial purposes).)

These allegations do not plausibly establish that any third party acquired communications while they were in transit as opposed to merely receiving information through the very

technologies that Plaintiff alleges EWC intentionally integrated into its website. Indeed, Plaintiff's theory is that EWC configured these tools to collect information from website visitors and transmit that information for advertising, analytics, audience development, conversion tracking, and other marketing purposes. (Dkt. 1 ¶¶ 39-40, 47-48, 67, 76-78, 86.) Those allegations describe the collection and use of information—not how any third party supposedly intercepted a communication "in progress or course before arrival." *Konop*, 302 F.3d at 878.

As in *Rodriguez v. Google LLC*, Plaintiff invokes concepts such as "real-time" tracking and contemporaneous acquisition but does not plausibly allege facts showing how any third party intercepted communications in transit. No. 20-CV-04688-RS, 2022 WL 214552, at *1 (N.D. Cal. Jan. 25, 2022). Likewise, courts have dismissed Wiretap Act claims where the complaint alleged recording, collection, or capture of information but failed to plausibly allege contemporaneous interception. *See Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023); *Licea v. Cinmar, Inc.*, 659 F. Supp. 3d 1096, 1110 (C.D. Cal. 2023).

Because the Complaint alleges only that information was collected, transmitted, shared, and later used through technologies embedded on EWC's Website, rather than facts plausibly showing an independent third party intercepted communications during transmission, Plaintiff fails to adequately plead a qualifying interception under the Wiretap Act.

**iv. The Contents of Plaintiff's Communications Were Not Disclosed.**

Under the Wiretap Act, "contents" is defined as "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8). Several courts have interpreted the term "contents" to mean "the intended message conveyed by the communication and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (citing *United States v. Reed*, 575 F.3d 900, 917 (9th Cir. 2009) (holding that

information about a telephone call's "origination, length, and time" was not "contents" for purposes of § 2510(8), because it contained no "information concerning the substance, purport or meaning of [the] communication"); *Gilday v. Dubois*, 124 F.3d 277, 296 n. 27 (1st Cir. 1997) (holding that a device that "captures electronic signals relating to the [personal identification number] of the caller, the number called, and the date, time and length of the call" does not capture the contents of communications and therefore "is not within the ambit of the Wiretap Act.). Plaintiff only alleges that search terms embedded in computer code that are automatically created upon a users' visit to EWC's website were allegedly disclosed, amongst other record information. Therefore, Plaintiff's Wiretap Act claim must be dismissed because no contents of communications were disclosed but rather, only record information.

## III. PLAINTIFF FAILS TO STATE A CLAIM FOR INTRUSION UPON SECLUSION.

"Texas recognizes three separate types of invasion of privacy: (1) intrusion upon seclusion or solitude or into one's private affairs; (2) public disclosure of embarrassing private facts; and (3) wrongful appropriation of one's name or likeness." *Doggett v. Travis L. Firm, P.C.*, 555 S.W.3d 127, 130 (Tex. App. 2018). Plaintiff alleges a claim for intrusion on her "seclusion."(Dkt. 1 ¶¶ 132-40). The claim fails. The tort occurs from an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which would be highly offensive to a reasonable person. *See Trusty v. Walmart Inc.*, 2020 WL 2497733, at *2 (S.D. Tex. May 13, 2020); *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993). Courts considering the tort have held that allegations relating to electronic transmission or access to public websites do not constitute tortious intrusion upon seclusion. Separately, plaintiffs fail to plead any intentional act by EWC or that the alleged intrusion would be highly offensive to a reasonable person. This claim should be dismissed.

### i. <u>Plaintiff Fails to Allege an Actionable Intrusion</u>

For a seclusion claim, courts generally require allegations of a physical invasion, trespass-like intrusion, or eavesdropping akin to wiretapping, microphones, surveillance, or spying. The tort exists "only when there has been 'a physical invasion of a person's property or . . . eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying.'" *Ross v. Midwest Commc'ns, Inc.*, 870 F.2d 271, 273 (5th Cir. 1989). Texas courts likewise recognize that intrusion upon private affairs typically requires either a trespass or an effort to discover private information through comparable means. *Amin v. United Parcel Serv., Inc.*, 66 F.4th 568, 577 (5th Cir. 2023); *Walters v. Blue Cross & Blue Shield of Tex., Inc.*, 2022 WL 902735, at *4 (N.D. Tex. Mar. 28, 2022).

Here, Plaintiff alleges only that EWC embedded tracking technologies on its website and that information relating to users' interactions with the Website was transmitted to third parties. (Dkt. 1 ¶¶ 33-104, 127-35.) Plaintiff does not allege any physical intrusion, trespass, surveillance, wiretap, microphone, spying, or comparable invasion of her property or private space. Instead, Plaintiff's theory is that EWC disclosed information generated through interactions with EWC's public-facing website.

Those allegations are insufficient under Texas law. In *Walters*, the defendant allegedly disclosed the plaintiff's medical records to a third party without authorization. 2022 WL 902735, at *1. Even so, the court dismissed the intrusion-upon-seclusion claim, holding that disclosure of information to a third party constituted only a "virtual intrusion" and not the type of intrusion required by Texas law. *Id.* at *4. The same is true here. Plaintiff alleges disclosure of information derived from Website interactions, not an actual intrusion into her solitude or seclusion.

Likewise, in *Sweat v. Houston Methodist Hospital*, the court dismissed an intrusion upon seclusion claim premised on allegations that a hospital transmitted patient information through

Meta Pixel and similar technologies. No. CV H-24-775, 2024 WL 3070184, at *3 (S.D. Tex. June 20, 2024). The court held that "gathering information and disclosing it to a third party, even medical information, does not qualify as an actual intrusion." *Id.* If the disclosure of purportedly sensitive medical information is insufficient, Plaintiff's allegations regarding browsing activity, searches, cookies, and device identifiers necessarily fail as well.

**ii. Plaintiff Fails to Allege an Intentional Intrusion**

Plaintiff's claim independently fails because she does not plausibly allege that EWC intentionally intruded upon her privacy. Texas courts treat intrusion upon seclusion as an intentional tort requiring a willful and unwarranted invasion of privacy. *Summerlin v. Barrow*, 2018 WL 1322172, at *3 (N.D. Tex. Mar. 13, 2018); *Johnson v. MHMR Auth. of Brazos Valley*, 2023 WL 8630064, at *6 (S.D. Tex. Dec. 13, 2023).

Plaintiff alleges only that EWC "placed the Tracking Entities in the middle of conversations" and that EWC represented users could disable certain tracking technologies. (Dkt. 1 ¶¶ 134, 136.) She further alleges that EWC used those technologies for advertising, analytics, audience development, conversion tracking, and related marketing purposes. (Dkt. 1 ¶¶ 39-40, 47-48, 67, 76-78, 86.) But Plaintiff does not plead facts showing that EWC intentionally sought to invade her seclusion, spy upon her, or otherwise engage in the type of conduct giving rise to this tort. Rather, Plaintiff relies on conclusory assertions that EWC's conduct was intentional. Such bare recitations of the elements are insufficient. *See Ball v. United Parcel Serv., Inc.*, No. CIV.A. H-10-1253, 2011 WL 1642148, at *2 (S.D. Tex. Apr. 29, 2011) ("In this case, Plaintiff merely quotes the language from Texas cases, stating that UPS invaded his privacy rights by 'making an intentional and an unreasonable, unjustified and/or unwarranted intrusion, physically or otherwise, upon the solitude, seclusion, or private affairs of Mr. Ball, which would be highly offensive to a

reasonable person.' Plaintiff does not, however, allege facts to support this summary allegation. As a result, Defendant is entitled to dismissal of the invasion of privacy claim.").

**iii. <u>Plaintiff Does Not Allege an Intrusion Highly Offensive to a Reasonable Person</u>**

Plaintiff must also allege facts showing an intrusion that would be "highly offensive" to a reasonable person. See *Valenzuela*, 853 S.W.2d at 513. "To be actionable, the intrusion must be highly offensive meaning that it must be unreasonable, unjustified, or unwarranted." *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 816 (S.D. Tex. 2014).

The information at issue here is not personal health information, nor is EWC an entity subject to HIPAA, as EWC offers elective hair removal services. (*See* Dkt. 1 ¶ 14.) Instead, the information Plaintiff contends sensitive information ***may*** include "webpages and videos viewed or requested; inferred interests, preferences, age, location, or other characteristics based on user behavior and content engagement; and personal, device, and technical identifiers such as device type, operating system, and browser type. The data also includes persistent identifiers that enable recognition of users across sessions and websites, users' email addresses, and approximate geolocation information derived from IP addresses or similar signals." (Dkt. 1 ¶ 6.) Notably, Plaintiff only alleges that personal information, including her browsing activity (what webpages she visited) and device identifier, were disclosed. (*Id.* ¶ 8.).

Courts have routinely held that the collection and dissemination of browsing activity, website interactions, user identifiers, analytics information, and similar online activity does not constitute a highly offensive intrusion into privacy. *See Sweat*, 2024 WL 3070184, at *3; *Walters*, 2022 WL 902735, at *4. Nor do Plaintiff's repeated references to "Sensitive Information" alter the analysis. Plaintiff's use of that label does not establish a legally protected privacy interest, particularly where the alleged information consists primarily of browsing activity, searches, user

interactions, identifiers, and website analytics data generated through use of a public website. (Dkt. 1 ¶¶ 6, 85, 127-28.) Accordingly, Plaintiff's intrusion upon seclusion claim should be dismissed.

## IV. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE TEXAS DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT.

Under the DTPA, a consumer may recover only where the challenged conduct satisfies one of the statutory pathways set forth in § 17.50 and causes recoverable economic damages. Although Plaintiff does not expressly identify which subsection of the DTPA she invokes, the Complaint appears to proceed under Tex. Bus. & Com. Code § 17.46(a)., which permits recovery for a "false, misleading, or deceptive act or practice" that is specifically enumerated in § 17.46(b) and relied upon by the consumer to her detriment. Plaintiff alleges that EWC falsely represented through its cookie banner and cookie-preference settings that users could disable the sale or sharing of personal information and reject non-essential cookies. (Dkt. 1 ¶¶ 93-99, 146-54.) Even accepting those allegations as true, Count III fails because Plaintiff does not identify a cognizable § 17.46(b) violation, fails to satisfy Rule 9(b), and fails to adequately plead reliance, producing cause, or recoverable economic damages.

### i. Plaintiff Fails to Meet Rule 9(b)'s Heightened Pleading Standard.

Claims sounding in misrepresentation under the DTPA are subject to Rule 9(b)'s heightened pleading requirements. *Franklin v. Apple Inc.*, 569 F. Supp. 3d 465, 479 (E.D. Tex. 2021) ("[C]laims made under the DTPA for misrepresentation are subject to the heightened pleading requirements of Rule 9(b)."); *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) (same).

Although Plaintiff identifies EWC's cookie banner and preference interface as the source of the alleged misrepresentations, the Complaint still fails to plead fraud with the particularity Rule 9(b) requires. Plaintiff does not identify who made the challenged statements, when she viewed

the statements, what specific information was allegedly transmitted despite her selections, or how the challenged disclosures differed from what the cookie settings themselves disclosed. Instead, Plaintiff relies on generalized allegations that EWC represented users could opt out of certain tracking technologies and that those representations were false. (Dkt. 1 ¶¶ 89-104, 148-54.) Such conclusory allegations do not satisfy Rule 9(b). See *Franklin*, 569 F. Supp. 3d at 479.

**ii. Plaintiff Does Not Identify Any Conduct Specifically Enumerated in § 17.46(b).**

Plaintiff's claim fails for the additional reason that § 17.50(a)(1) authorizes recovery only for conduct specifically enumerated in § 17.46(b). Yet Plaintiff never identifies any subsection of § 17.46(b) that EWC allegedly violated. Instead, she alleges generally that EWC engaged in "misleading," "false," or "deceptive" conduct. (Dkt. 1 ¶¶ 145-55.) Courts routinely dismiss statutory claims that fail to tie the alleged conduct to a specific statutory provision. *See, e.g.*, *McIntosh v. Bank of Am., N.A.*, No. 3:12-CV-4336-BH, 2013 WL 3866619, at *4 (N.D. Tex. July 26, 2013) ("To satisfy the second element, the defendant's conduct must violate a specific laundry-list provision of § 17.46(b) of the DTPA or constitute 'unconscionable action.'"); *Univ. Baptist Church Fort Worth v. Lexington Ins. Co.*, No. 4:17-CV-962-A, 2018 WL 2372645, at *5 (N.D. Tex. May 23, 2018), *aff'd sub nom. Univ. Baptist Church of Fort Worth v. York Risk Servs. Grp. Inc.*, 776 F. App'x 863 (5th Cir. 2019) ("These statements, taken together, demonstrate another instance where plaintiff has failed to point to the specific factual allegations supporting its claims. Plaintiff merely cited the statutory language and left it up to the court's and the defendants' imagination as to what factual allegations support plaintiff's claims . . . Plaintiff has not identified the 'who, what, when, where, and how' of the purported violations."); *cf. Val-Com Acquisitions Tr. v. Bank of Am., N.A.*, No. 4:10-CV-421, 2011 WL 4591959, at *4 (E.D. Tex. Sept. 30, 2011)

("Plaintiffs fail to allege the specific statutory provisions violated by Defendants and fail to allege facts sufficient to support a RESPA violation.").

Even setting that defect aside, Plaintiff's allegations do not plausibly fit within any enumerated subsection. The alleged misrepresentations concern website cookie settings and privacy controls—not the characteristics, quality, value, performance, or benefits of EWC's waxing services or products. Plaintiff therefore fails to plead an actionable violation of § 17.46(b).

**iii. The Alleged Deceptive Conduct Did Not Occur "In Connection" with Plaintiff's Transaction in Goods or Services.**

In *Amstadt v. U.S. Brass Corporation*, the Texas Supreme Court held that DTPA liability exists only where the alleged deceptive conduct occurs "in connection with" the plaintiff's transaction in goods or services. S.W.2d 644, 649 (Tex. 1996) ("Despite its broad, overlapping prohibitions, we must keep in mind why the Legislature created this simple, nontechnical cause of action: to protect consumers in consumer transactions. Consistent with that intent, we hold that the defendant's deceptive conduct **must occur in connection with a consumer transaction**, as we explain below.") (emphasis added). This requirement imposes a meaningful limitation. It prevents the DTPA from being applied to conduct merely incidental or unrelated to a consumer transaction.

Plaintiff alleges that she visited EWC's website, maintained an account, and booked services through the Website. (Dkt. 1 ¶¶ 8, 13, 147.) Nevertheless, the alleged misrepresentations concern website privacy settings and cookie-disclosure practices—not the nature, quality, characteristics, value, pricing, or performance of any waxing services or products purchased by Plaintiff.

Even accepting Plaintiff's allegations as true, the challenged statements concern ancillary website functionality rather than the consumer transaction itself. Plaintiff does not allege that she purchased services because of any misrepresentation regarding EWC's services or products, nor

does she allege that any service she received differed from what was promised. Accordingly, Plaintiff fails to plausibly allege the type of nexus between the alleged deception and a consumer transaction contemplated by the DTPA.

**iv. Plaintiff Fails to Plead Causation and Reliance.**

The DTPA requires both detrimental reliance and producing cause. *Brown & Brown of Texas, Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 387 (Tex. App. 2010) ("Under the DTPA, a consumer may bring an action when he has relied to his detriment on a false or misleading representation, and the reliance is a producing cause of damages."); *Penn-Am. Ins. Co. v. Zertuche*, 770 F. Supp. 2d 832, 840 (W.D. Tex. 2011) (same). Plaintiff adequately pleads neither.

Most notably, Plaintiff's own allegations defeat causation. Plaintiff repeatedly alleges that the Tracking Tools began operating immediately when a user arrived on the website and before a user could interact with the cookie settings. (Dkt. 1 ¶¶ 4, 41.) Plaintiff likewise alleges that her information was transmitted as soon as she visited the website. (Dkt. 1 ¶¶ 8, 13.) Thus, according to the Complaint itself, the very injury of which Plaintiff complains occurred before she could have relied on any subsequent cookie-setting selection or confirmation process. If the alleged data collection occurred immediately upon page load, as Plaintiff contends, that alleged injury could not have been caused by reliance on later statements concerning cookie preferences.

Plaintiff also fails to plausibly allege that any specific representation was a producing cause of her alleged injury. The Complaint attributes the alleged harm to the operation of background tracking technologies, not to any particular statement. Because Plaintiff does not plausibly allege that a specific representation caused her alleged injury, the reliance and producing-cause elements are not satisfied.

**v. Plaintiff Fails to Plead Recoverable Damages.**

The DTPA authorizes recovery only for economic damages or damages for mental anguish. Tex. Bus. & Com. Code § 17.50(a). "Economic damages" means "compensatory damages for pecuniary loss, including costs of repair and replacement." Tex. Bus. & Com. Code § 17.45(a)(11). Plaintiff does not plausibly allege either. Plaintiff alleges "loss of privacy," "loss of control" over personal information, "economic harm," and the "diminution in value" of personal data. (Dkt. 1 ¶¶ 152-153, 168.) But Plaintiff fails to specify what purported "economic harm" she suffered, and she does not allege that she paid more for services because of the challenged representations, that any service she received was worth less than she paid, that she suffered any out-of-pocket loss, or that she lost the benefit of any bargain. *Odia v. Lopez*, No. 14-00-00179-CV, 2001 WL 777066, at *3 (Tex. App. July 12, 2001) ("The plain language of the DTPA states that a consumer can only maintain an action where conduct, prohibited under the DTPA, is a producing cause of economic damages, or damages for mental anguish.").

Instead, Plaintiff relies exclusively on generalized privacy-based injuries and abstract assertions concerning the value of personal information. Such allegations are insufficient to plead recoverable economic damages under the DTPA. Because Plaintiff fails to allege a concrete economic injury, Count III should be dismissed.

## V. PLAINTIFF FAILS TO STATE A CLAIM FOR COMMON LAW FRAUD, DECEIT AND/OR MISREPRESENTATION.

Plaintiff's fraud claim fails because she does not plausibly plead the essential elements of fraud, much less with the particularity required by Rule 9(b). To state a claim for common-law fraud under Texas law, Plaintiff must allege: "(1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the

intent *1033 that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury". *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.,* 51 S.W.3d 573, 577 (Tex. 2001)). Fraud claims are subject to Rule 9(b), which requires a plaintiff to plead the circumstances constituting fraud with particularity, including the "who, what, when, where, and how" of the alleged fraud. *Id.* at 1032.

Although Plaintiff alleges that EWC's cookie banner and cookie settings falsely suggested users could disable certain tracking technologies and opt out of the sale or sharing of personal information (Dkt. 1 ¶¶ 159-65), the claim nevertheless fails because Plaintiff does not adequately plead an actionable misrepresentation, justifiable reliance, or injury resulting from any alleged misrepresentation

**i. <u>Plaintiff Fails to Allege an Actionable Representation</u>**

The Complaint identifies generally the website's cookie banner and cookie-preference settings and alleges that those disclosures represented users could opt out of the sale or sharing of personal information and disable non-essential cookies. (Dkt. 1 ¶¶ 92-99, 159-64.) But Plaintiff does not adequately allege why any specific statement was false when made, who made the statement, when Plaintiff viewed it, or what specific information was allegedly transmitted despite her selections. Instead, Plaintiff relies on generalized allegations that EWC's disclosures were misleading because Tracking Tools allegedly remained operational notwithstanding users' privacy selections.

Nor does Plaintiff plausibly allege facts showing that EWC knew any statement was false when made. The Complaint simply asserts, in conclusory fashion, that EWC "knew" the

representations were false because it controlled the website and selected the Tracking Tools. (Dkt. 1 ¶ 163.) Such formulaic recitations of the fraud elements are insufficient under Rule 9(b).

**ii. <u>Plaintiff Fails to Allege Reliance</u>**

Plaintiff likewise fails to plausibly plead reliance. Most notably, Plaintiff's own allegations undermine her theory of reliance. Plaintiff alleges that Tracking Tools began operating immediately when a user arrived on the Website, before the user could view or interact with the cookie settings. (Dkt. 1 ¶¶ 4, 41.) Plaintiff further alleges that her information was transmitted "as soon as she visited the Website." (Dkt. 1 ¶¶ 8, 13.)

Accordingly, the very conduct of which Plaintiff complains allegedly occurred before she could have relied on any subsequent cookie-setting selection or confirmation process. If tracking occurred immediately upon arrival, as Plaintiff alleges, then that alleged injury could not have resulted from reliance on later statements concerning privacy preferences.

Plaintiff also alleges that she relied on EWC's representations by continuing to use the website and by selecting opt-out preferences. (Dkt. 1 ¶¶ 166-167.) But she does not plausibly allege that she took—or refrained from taking—any action she otherwise would not have taken absent the challenged statements. Instead, Plaintiff alleges that she visited the website to browse services and book appointments and that the challenged tracking occurred regardless of any privacy selections. (Dkt. 1 ¶¶ 8, 13, 97-99.) Those allegations do not plausibly establish justifiable reliance.

**iii. <u>Plaintiff Fails to Allege Injury</u>**

Finally, Plaintiff does not plausibly allege that any alleged misrepresentation caused a cognizable injury. Plaintiff alleges injuries consisting primarily of "loss of privacy," "loss of control" over personal information, and diminution in the value of personal data. (Dkt. 1 ¶ 168.) But Plaintiff does not allege that she paid more for services because of any misrepresentation, that

any service she received was worth less than she paid, or that she suffered any identifiable out-of-pocket loss as a result of the challenged statements.

Moreover, Plaintiff's own allegations establish that the purported data collection occurred automatically upon visiting the website and before any interaction with the cookie settings. (Dkt. 1 ¶¶ 4, 8, 13, 41.) Thus, the alleged injury flows from Plaintiff's theory that Tracking Tools operated in the background—not from any subsequent statement contained in the cookie banner or privacy controls. Because Plaintiff fails to plausibly allege an actionable misrepresentation, justifiable reliance, or injury caused by a misrepresentation, Count IV fails as a matter of law and should be dismissed.

## VI. PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT.

Plaintiff's unjust-enrichment claim fails because she does not plausibly allege that she conferred a benefit on EWC under circumstances making it unjust for EWC to retain that benefit. Under Texas law, unjust enrichment applies only where a defendant has wrongfully secured a benefit or obtained one through fraud, duress, or the taking of an undue advantage. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41-42 (Tex. 1992); *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App. 2009).

Here, Plaintiff alleges that EWC "obtained a benefit by collecting, processing, and enabling third-party monetization of Sensitive Information" and used that information to support advertising and marketing efforts. (Dkt. 1 ¶ 173.) But Plaintiff does not allege that she conferred money, property, or any other identifiable benefit upon EWC that in equity and good conscience belongs to her. Rather, Plaintiff alleges that she visited EWC's website, maintained an account, and booked services through the website. (Dkt. 1 ¶¶ 8, 13.) Those allegations describe an ordinary consumer relationship, not the transfer of a benefit whose retention would be inequitable.

Nor does Plaintiff plausibly allege that EWC obtained any benefit through fraud, duress, or undue advantage. The unjust-enrichment claim is entirely derivative of Plaintiff's other causes of action and rests on the same allegations concerning website tracking and data collection. (Dkt. 1 ¶¶ 171-75.) Conclusory assertions that EWC benefitted from advertising, analytics, or marketing activities are insufficient to state a plausible unjust-enrichment claim.

Accordingly, because Plaintiff does not plausibly allege that she conferred a benefit on EWC under circumstances making retention of that benefit unjust, Count V should be dismissed.

## VII. THE COURT SHOULD STAY THIS ACTION PENDING FINAL APPROVAL PROCEEDINGS IN *CUMOR & DUNN V. EUROPEAN WAX CENTER, INC.*, CASE NO. 26-CA-002430 (FLA. 13TH JUD. CIR.).

EWC previously moved to stay this action pending resolution of the settlement proceedings in *Cumor & Dunn v. European Wax Center, Inc*., Case No. 26-CA-002430 (Fla. 13th Jud. Cir.). (Dkt. 9.) This Court denied that request but expressly reserved the question of whether the Florida settlement would ultimately have preclusive effect because "there is no final settlement yet." (Dkt. 12). In doing so, the Court specifically noted that "[m]uch of Plaintiff's opposition to a stay relies on the argument that the resolution of the Florida class action will not resolve Plaintiff's claims." (Dkt. 12 at 2 n.1).

Since entry of that Order, the circumstances before the Court have materially changed. In opposing EWC's motion to stay, Plaintiff argued that the Florida Action would not resolve the claims asserted here because the Texas Action allegedly involved different tracking technologies, different legal theories, and a different factual predicate than the claims at issue in the Florida Action. (Dkt. 10 at 1–3, 8-12). Plaintiff has since represented to the Florida court that the proposed settlement would extinguish those same claims. Instead of opting out by the June 30, 2026 deadline, Plaintiff elected not to opt out of the settlement class and instead moved to object and intervene. In that filing, Plaintiff repeatedly represented that the proposed settlement **would**

**<u>extinguish the claims she asserts in this action</u>**. *See* Ex. A, *Cumor & Dunn v. European Wax Center, Inc*., Case No. 26-CA-002430 (Fla. 13th Jud. Cir.), Proposed Intervenor Alaya Smith's Motion for Leave to Intervene at 1, 8-9 (June 30, 2026). Plaintiff told the Florida court that intervention was necessary because the settlement "would extinguish" the federal and state-law claims asserted in the Texas Action and that she would "lose substantial rights" if the settlement were approved. *Id.*

Plaintiff further represented that the Florida settlement release "reaches Ms. Smith's Texas claims directly," that she is "a member of the class whose claims the release purports to extinguish," and that approval of the settlement would result in the release of the claims she first filed in this action. *Id.* at 7–9. Plaintiff's Complaint in Intervention likewise alleges that the proposed settlement "would extinguish" the claims asserted in this action and repeatedly asserts that the Florida release reaches those claims. *See id.* ¶¶ 12, 29-32.

Thus, the principal premise on which Plaintiff opposed EWC's original stay request no longer exists. Plaintiff previously argued to this Court that the Florida settlement would not resolve her claims. (Dkt. 10 at 8-12). She now argues to the Florida court that the settlement will extinguish those same claims and elected to remain within the settlement class after the opt-out deadline expired. Ex. A, Proposed Intervenor Alaya Smith's Motion for Leave to Intervene at 1, 7-9.

A brief stay would conserve judicial and party resources pending final approval[1] and allow the parties to address the effect of any resulting judgment on a complete record.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant European Wax Center, Inc. respectfully requests that the Court stay this action pending final approval proceedings in *Cumor & Dunn v. European Wax*

[1] Currently scheduled for August 24, 2026.

*Center, Inc.*, Case No. 26-CA-002430 (Fla. 13th Jud. Cir.). In the alternative, should the Court decline to stay the action, EWC respectfully requests that the Court dismiss Plaintiff's Class Action Complaint in its entirety, with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: July 28, 2026

Respectfully submitted,

**Baker & Hostetler LLP**

*/s/ Ambika B. Singhal*
Ambika B. Singhal
Texas Bar No. 24132954
asinghal@bakerlaw.com
2850 North Harwood Street, Suite 1100
Dallas, TX 75201-2640
Tel: 214.210.1200
Fax: 214.210.1201

*Attorneys for Defendant European Wax Center, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was electronically filed on July 28, 2026 with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*/s/ Ambika B. Singhal*
Ambika B. Singhal